NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS LIDDELL, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 2:12-cv-2669 (DMC)(JBC) |
| NEW JERSEY DEPARTMENT OF CORRECTIONS., et al., | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the Motion of Defendants Jack Ozsvart, Robert, Chetirkin, and Ronald Diehm and the Motion of Defendant Erica Madden (collectively the "DOC Defendants") to Dismiss the Complaint of Plaintiff Thomas Liddell ("Plaintiff") pursuant to FED. R. CIV. P. 12(b)(6). Pursuant to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Defendants' Motions to Dismiss are **granted in part and denied in part**.

**I.     BACKGROUND**[1]

On September 30, 2008, Plaintiff was sentenced in the Superior Court of New Jersey, Sussex County. The court did not impose any orders of no-contact upon Plaintiff at that time. On October 18, 2008, Plaintiff was transported to the Adult Diagnostic Treatment Center ("ADTC") in Avenel, New Jersey. On January 15, 2009, Plaintiff was interviewed by Defendant Madden, a

---

[1] The facts from this section are taken from the parties' pleadings.

1

senior investigator at the ADTC, who instructed him not to contact his victims. When Plaintiff asked Madden whether she had any legal documentation to support her demand, she showed Plaintiff an email written by Defendant Ferguson, Victim Witness Coordinator of Sussex County. Plaintiff again asked Madden if there was any legal documentation but Madden did not provide an answer.

On January 26, 2009, Plaintiff wrote a letter to his son and sent it to Plaintiff's former residence. Plaintiff's estranged wife, Eileen Liddell, intercepted the letter and forwarded it to Ferguson at the Sussex County Prosecutor's Office. On February 4, 2009, Plaintiff was summoned to the office of Defendant Diehm, Disciplinary Sergeant. In Diehm's office, Plaintiff received two institutional disciplinary charges written by Madden in violation of N.J.A.C. 10A:4-4.1: charge .256 (disobeying a direct order from Madden not to write to the victim's address) and .701 (unauthorized use of the mail). After Diehm informed Plaintiff that he had disobeyed a direct order by writing to the victim's home, Plaintiff pleaded not guilty and informed Diehm that no court order existed that stated that Plaintiff could not write to his son. Diehm became angry and told Plaintiff that he had looked through his record and that he would make sure Plaintiff would spend seventeen years in jail and then be sent "next door," meaning civil commitment. On February 11, 2009, Defendant Meehan, a Disciplinary Hearing Officer, found Plaintiff guilty of both charges and sanctioned him to 30 days detention, 180 days administrative segregation, and 120 days loss of commutation time. Plaintiff appealed the decision and on February 20, 2009, it was upheld by Defendant Goodwin, the Administrator at the ADTC. On March 2, 2009, Plaintiff was transferred to the ACSU of the East Jersey State Prison to serve his 180 days of segregation time. Plaintiff's claims mainly stem from the living conditions he was subjected to during this period of confinement. According to Plaintiff, among

2

other things, he was not given proper clothes, his cell was filthy and freezing, he did not receive daily showers, he did not receive enough food, and an officer identified him to other inmates as a sex offender.

On May 27, 2009, Plaintiff appeared in the Superior Court of New Jersey, Sussex County for a reconsideration of his sentence. At this hearing, the prosecutor asked the court to enter a restraining order against Plaintiff to prevent him from contacting his victims and other members of his family. The court declined, stating that such an order was out of its jurisdiction and would have to be raised by way of a civil matter. Plaintiff's motion for a reconsideration of his sentence was denied on June 1, 2009. Plaintiff was eventually transferred back to the ADTC, where he claims that the medical staff was horrified at his condition, as he was weak, incoherent, and dehydrated due to mistreatment he suffered during his transfer.

On November 12, 2009, Plaintiff mailed a birthday card to his daughter at his former residence. On November 13, 2009, Plaintiff received the same two disciplinary charges that he had previously received. On November 15, 2009, Plaintiff sent a letter to Eileen Liddell at his former residence. On November 16, 2009, he again received the same two disciplinary charges. Plaintiff also met with Madden on that day, who told him that she received a fax from Ferguson that stated that Plaintiff was not allowed to write or call the victims. When Plaintiff asked to see the fax, Madden refused to show it to him.

On December 30, 2009, Defendant Ozsvart, a Disciplinary Hearing Officer, found Plaintiff guilty of two counts of charge .256 and sanctioned him to 15 days of detention for each. Ozsvart dismissed both of the .701 charges. Plaintiff was then transferred to the Close Custody Unit of the ADTC for 30 days of detention in solitary confinement. Plaintiff filed an administrative appeal and on January 4, 2010, Defendant Chetirkin, Assistant Superintendent,

3

upheld the sanctions. On February 8, 2010, Plaintiff filed an appeal with the Appellate Division. On March 17, 2010, the Appellate Division granted an order for final remand regarding the February 2009 charges. Upon remand, on May 6, 2010, an ADTC Disciplinary Hearing Officer found Plaintiff not guilty of the February 2009 charges, and they were vacated from Plaintiff's file. Also on remand, on April 19, 2011, an ADTC Disciplinary Hearing Officer found Plaintiff not guilty of the November 13, 2009 charges, which related to the card Plaintiff sent to his daughter, but upholding the charges from November 16, 2009, which related to the letter Plaintiff sent to Eileen Liddell. Plaintiff subsequently discovered that both of the November 2009 charges were still listed in his file, and he submitted a request that the charges be removed. On April 13, 2012, Plaintiff received an Inmate Progress Note informing him that the November 2009 charges had been removed from his record. On April 24, 2012, Plaintiff received final confirmation that all prior disciplinary charges had been removed from his record.

Plaintiff filed his initial Complaint on May 4, 2012 (ECF No. 1). Because Plaintiff requested to bring this action *in forma pauperis*, this Court reviewed the Complaint to determine whether it should be dismissed. On January 24, 2013, this Court dismissed all claims against the New Jersey Department of Corrections, all claims against Commissioner George Hayman, Plaintiff's Due Process claim, Plaintiff's Equal Protection claim, and all claims against Eileen Liddell (ECF No. 5). Plaintiff filed an Amended Complaint on April 8, 2013, alleging seven counts against various Defendants. (ECF No. 19). Ozsvart, Chetirkin, and Diehm filed a Motion to Dismiss on May 10, 2013 (ECF No. 30). Plaintiff filed an Opposition on June 4, 2013 (ECF No. 34). Madden filed a Motion to Dismiss on July 3, 2013 (ECF No. 38). Plaintiff filed an Opposition on July 17, 2013 (ECF No. 39).

4

## II. STANDARD OF REVIEW

In deciding a motion under FED. R. CIV. P. 12(b)(6), the District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." Id. On a motion to dismiss, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Plaintiff's complaint is subject to the heightened pleading standard set forth in Ashcroft v. Iqbal:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. 662, 678-679 (2009) (quoting Twombly, 550 U.S. at 557, 750).

## II. DISCUSSION

### A. Tort Claims

Counts one and two of the Complaint allege negligence and fraudulent misrepresentation. Under the New Jersey Tort Claims Act, a plaintiff is barred from recovering against a public entity or employee if he fails to file a notice of claim within ninety days of the claim's accrual. N.J.S.A. § 59:8-8. The burden is on Plaintiff to show that the notice of claim was filed. Bryant v.

5

Nolan, No. 09-2672, 2011 WL 1343017, at *2 (D.N.J. Apr. 7, 2011). Plaintiff's Complaint does not state that he filed a notice of claim, and although Plaintiff claims in his Opposition that he filed a notice of claim on May 4, 2012, he provides no evidence. Accordingly, Plaintiff's tort claims are dismissed without prejudice.

### B. Federal Claims

All DOC Defendants assert that they cannot be sued in their official capacities due to the Eleventh Amendment and because state officials are not "persons" under § 1983. However, Plaintiff's Complaint seeks injunctive relief, and state officials are considered "persons" under § 1983 when they are sued for injunctive relief. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 92 (1989). Because the DOC Defendants have not addressed Plaintiff's claims for injunctive relief, the remainder of this Opinion applies to both the individual and official capacity claims against the DOC Defendants.

#### 1) Equal Protection and Eight Amendment Claims

Count three of the Complaint alleges that the DOC Defendants violated Plaintiff's Equal Protection rights. Count seven alleges that the DOC Defendants violated Plaintiff's Eight Amendment rights. To state a claim in a civil rights action, a plaintiff must show that the defendant was personally involved in the alleged wrongs. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Id. See also Keenan v. City of Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992). If a plaintiff alleges that a defendant violated his rights based on actual knowledge and acquiescence, he must plead this claim with "appropriate particularity." Rode, 845 F.2d at 1207.

Here, Plaintiff alleges that his Equal Protection rights were violated because while he was

confined at the ACSU, he was subjected to severe abuse and unhygienic and debilitating conditions, which deprived him of rights and privileges received by other similarly situated prisoners (Compl. ¶ 189). Further, he alleges that his Eight Amendment rights were violated because the poor treatment he received while confined in the ACSU constituted cruel and unusual punishment (Id. ¶ 210). However, the instant Defendants were in no way personally involved in how Plaintiff was treated at the ACSU. See McCleester v. Dep't of Labor & Indus., No. 3:06-120, 2007 WL 2071616, at *13 (W.D. Pa. July 16, 2007) ("[T]he failure to allege the personal involvement of [the defendants] is . . . a fatal flaw requiring dismissal of [the plaintiff's] Equal Protection claim as to those [d]efendants."); Bacon v. Sherrer, No. 06-0504D, 2008 WL 906233, at *5 (D.N.J. Apr. 1, 2008) (dismissing the plaintiff's Eight Amendment claim when he did not show that the defendant had any knowledge of the harm the plaintiff faced in prison). Accordingly, Plaintiff's Equal Protection and Eight Amendment claims against the DOC Defendants in their individual and official capacities must be dismissed.

### 2) First Amendment Claim

Unlike with Plaintiff's Eight Amendment and Equal Protection claims, this Court finds that Plaintiff's Complaint sufficiently alleges that each DOC Defendant was personally involved in violating Plaintif's First Amendment rights by interfering with Plaintiff's ability to send mail. Plaintiff alleges that Madden instructed him not to contact his victims and would not answer Plaintiff's question about whether any legal documentation existed to support this demand (Compl. ¶¶ 37, 39). Plaintiff also alleges that Madden was on notice that the state court had refused to issue a restraining order against him (Id. ¶ 143). Plaintiff states that Diehm informed Plaintiff that he violated Madden's order not to write to his son and asked Plaintiff to plead guilty (Id. ¶ 54). Plaintiff also states that Diehm told him that he looked through Plaintiff's file,

7

which Plaintiff claims shows that Diehm must have known that there was no restraining order or no-contact order in place (Id ¶ 59). With respect to Ozsvart, Plaintiff alleges that Ozsvart found him guilty of disobeying Madden's orders after Plaintiff mailed a birthday card to his daughter (Id. ¶ 152). Further, Plaintiff states that he told Ozsvart that he urgently needed to communicate with his wife to curtail the foreclosure of their home, and that Ozsvart stated: "I don't care if your wife loses the house. I don't care if your wife and kids are homeless and out on the street. I don't care." (Id. ¶ 153). Finally, with respect to Chetirkin, Plaintiff asserts that Chetirkin upheld Ozsvart's finding of guilt despite the fact that a court order stating that he could not contact his children never existed (Id. ¶ 156). Accordingly, this Court will not dismiss Plaintiff's First Amendment claim for lack of personal involvement and will address the remainder of Defendants' arguments.

### a. Statute of Limitations

The DOC Defendants argue that Plaintiff's First Amendment claim is barred by the statute of limitations. The statute of limitations in New Jersey for a § 1983 claim is two years. See Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989). The DOC Defendants claim that, at the very latest, Plaintiff should have known of the alleged violation of his First Amendment rights on February 4, 2009, when he received his first set of disciplinary charges. Plaintiff, however, contends that his cause of action did not accrue until after his disciplinary charges had been vacated. To support this proposition, Plaintiff cites to Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), where the United States Supreme Court stated the following:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal,

8

expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

While Heck involved a very different procedural and factual scenario than the instant case, this Court finds that Plaintiff's argument is nonetheless supported by Third Circuit case law. See Thompson v. Pitkins, 514 F. App'x 88, 90 (3rd Cir. 2013) ("Because exhaustion of prison administrative remedies is mandatory under the Prison Litigation Reform Act, the statute of limitations applicable to § 1983 actions may be tolled while a prisoner exhausts."); Paluch v. Sec'y Pennsylvania Dep't Corr., 442 F. App'x 690, 694 (3rd Cir. 2011) (same). Because Plaintiff claims that his February 2009 charges were not vacated until May 6, 2010, and his November 2009 charges were not vacated until April 2012, Plaintiff's May 4, 2012 Complaint was timely.

### b. Qualified Immunity

The DOC Defendants additionally argue that Plaintiff's First Amendment claim must be dismissed because they are entitled to qualified immunity. "On its face, § 1983 admits of no immunities." Tower v. Glover, 467 U.S. 914, 920 (1984). "But since 1951 this Court has consistently recognized that substantive doctrines of privilege and immunity may limit the relief available in § 1983 litigation[,]" including recognition of qualified immunity for state executive officers. Id. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. See Pearson v. Callahan, 555 U.S. 223, 231 (2009). The protection of qualified immunity applies

9

regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Butz v. Economou, 438 U.S. 478, 507 (1978).

This Court finds that Plaintiff has set forth sufficient facts to show that the DOC Defendants violated an established constitutional right of which a reasonable person would have known. Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments. Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006). Plaintiff's Complaint alleges that he was persistently penalized for sending mail to his family members, despite the fact that no court order prohibiting said action had been entered. Defendants argue that their actions were reasonable because they relied on an email from Ferguson, the Victim Witness Coordinator and on statements made by Eileen Liddell. However, because Plaintiff maintains that no official documentation existed that barred him from sending mail to his family members and asserts that Defendants had an obligation to determine whether such an order existed, this Court finds that it is premature to dismiss his First Amendment claim at this time.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are **granted in part and denied in part**. An appropriate order follows this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date: December __, 2013
Original: Clerk's Office
cc: Hon. James B. Clark U.S.M.J.
All Counsel of Record
File