**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| | : | |
| THOMAS LIDDELL, | : | |
| | : | Civil Action No. 12-2669 (SDW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| NEW JERSEY DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**WIGENTON**, District Judge:

Presently before the Court is Plaintiff Thomas Liddell's motion for summary judgment. (ECF No. 107). Defendants filed briefs in opposition (ECF No. 116, 119), to which Plaintiff replied. (ECF No. 123). Also before this Court are the motions for Summary Judgment of the Department of Corrections ("DOC") Defendants (Chetirkin, Diehm, Madden, Ozsvart) (ECF No. 114) and the Prosecutor Defendants (Weaver and Ferguson) (ECF No. 112). Plaintiff filed briefs in opposition to those motions (ECF No. 121, 122), to which the DOC and Prosecutor Defendants have replied (ECF No. 118, 120, 124). For the following reasons, this Court denies Plaintiff's motion for summary judgment, and grants both the Prosecutor and DOC Defendants' motions for summary judgment as to all of Plaintiff's claims.

## I.  BACKGROUND

Plaintiff, Thomas Liddell, is a convicted state prisoner currently confined to the Adult Diagnostic and Treatment Center (ADTC) at East Jersey State Prison in Avenel, New Jersey. (Document 3 attached to ECF No. 114 at 99).   On March 31, 2008, Plaintiff pled guilty to two counts of first degree endangering the welfare of a child in violation of N.J. Stat. Ann. § 2C:24-4(a) and two counts of second degree endangering the welfare of a child in violation of N.J. Stat. Ann. § 2C:24-4(b)(3).   (Document 4 attached to ECF No. 107 at 12).   These charges arose out of Plaintiff's filming of his two daughters, who were at the time under sixteen years of age, engaged in masturbation and other sexual conduct.   (Document 3 attached to ECF No. 114 at 80-81). Subsequent to the state trial court's acceptance of Plaintiff's guilty plea, the following exchange occurred during which Plaintiff was ordered to have no contact with his victims and their mother after his conviction:

> [The State]:   Your Honor, [the] only other thing with regard to this matter is as we discussed, [Defense] Counsel and I, with regard to the No Contact Provision as provided in the bail.   I know [counsel] has discussed it with [Plaintiff], we had talked about, but that that includes, regardless, he cannot have any contact with the victims or the victims' mother in any way, shape, or form.   Either through third parties, direct, phone, e-mail, mail.   He cannot have contact with them.
>
> THE COURT:   Well, given the defendant's plea of guilty to these four counts, certainly the Court will order no contact with the victims.   No contact with their mother.   Either directly or through third parties.
>
> [Defense Counsel]:   Sorry to interrupt.   The more specific issue today I discussed with my client was that contact includes and still attaches despite the fact there's [a] civil issue involved now with the filing . . . of [a] divorce complaint that doesn't allow him to have contact in the civil context.   He has to do that through Counsel.

THE COURT:   That's correct.

[Defense Counsel]:   Or some other representative.

THE COURT:   That will be all.

(Document 3 attached to ECF No. 114 at 82).   This no contact order, however, was not memorialized in Plaintiff's Judgment of Conviction.   (*See* Document 4 attached to ECF No. 107 at 12-15).   Plaintiff was ultimately sentenced to a twenty-two year term of incarceration with a mandatory minimum of eleven years before Plaintiff would be eligible for parole.   (*Id.*).

Because he was convicted of sexual offenses, Plaintiff was confined to the ADTC.   Within a few weeks of his arrival at the ADTC, Plaintiff began sending letters, greeting cards, and birthday cards to his children and ex-wife.   (Document 3 attached to ECF No. 112 at 73).   These attempts included birthday cards sent to both of his victims and one of his sons in November and December of 2008, a birthday and anniversary card sent to his ex-wife in December 2008, and several letters to his ex-wife, son, and daughters sent in between November 12, 2008, and January 12, 2009.   (*Id.* at 73, 126-140).   Plaintiff received no response or other contact from any of his children or his wife in response to these letters and cards.   (*Id.* at 73).

Upon receipt of these numerous mailings, Plaintiff's former wife contacted Lois Ferguson, then the Victim Witness Coordinator for the Sussex County Prosecutor's Office, and asked her to have Plaintiff's mailings stopped.   (Document 3 attached to ECF No. 112 at 115-16).   Plaintiff's ex-wife made this request with the full support and agreement of all of her children.   (*Id.* at 115-16, 142-151).   Ferguson in turn contacted Beverly Hastings of the New Jersey Department of Corrections and requested that the attempts at contact be halted in accord with the wishes of Mrs. Liddell and her family.   (*Id.* at 61, 125).   Following the initial contact, Ferguson followed up by

3

sending copies of all the letters submitted to the Liddell children and Mrs. Liddell to Hastings on January 30, 2009.   (*Id.* at 125).

Following Ferguson's contacting the DOC, Investigator Madden of the prison Special Investigations Department ("SID") interviewed Plaintiff at the ADTC.   (*Id.* at 74).   During that interview, Madden told Plaintiff that his family did not wish to have contact with him, and then ordered him not to contact anyone at his family's address, including his former wife, two daughters (his victims), and his two sons who also resided at that address at the time.   (*Id.*).   Plaintiff testified at his deposition that Madden told him "not to write to [his] victims at [his family's address]. . . . [When Plaintiff asked if he could write to either of his two sons] she said [Plaintiff] cannot write to anybody at that address."   (*Id.*).   Following the order, Madden instructed Plaintiff to fill out a document which acknowledged that she had ordered him not to contact anyone at his family's residence.   (*Id.*).   As Plaintiff refused to sign this form, Madden called in a guard lieutenant and told the guard that Plaintiff refused to sign the document acknowledging her order not to contact his family.   (*Id.*).

Plaintiff asserts that, during the interview, Investigator Madden provided him no basis for the order not to contact his family other than briefly showing him one of Lois Ferguson's e-mails. (*Id.* at 75).   Plaintiff contends that he asked whether there was a court order of no contact, but that Madden failed to identify any order in response.   (*Id.*).   Plaintiff therefore filled out an inmate remedy form following his interview with Madden requesting clarification of whether there was a court order or other legal basis for ordering him not to contact his family.   (*Id.*).   Plaintiff claims that he never received a response to that remedy form.   (*Id.*).

Following the meeting with Investigator Madden, Plaintiff sent another letter to his son

Daniel, at his family's address, on January 26, 2009.  (*Id.* at 75, 134-35).   Upon receiving the letter, Mrs. Liddell forwarded it to Lois Ferguson, who in turn provided the letter to Beverly Hastings on January 30, 2009.  (*Id.* at 125).   The following day, on January 31, 2009, Plaintiff was called into the office of Sergeant Russo, who informed Plaintiff that his son had contacted the prison and did not want any contact with Plaintiff, and that Plaintiff had violated Madden's Order. (*Id.* at 74-76).   Plaintiff alleges that, during this exchange, Russo called him a "moron" for sending the letter to his son.  (*Id.* at 74).   On February 4, 2009, Plaintiff was called back into the sergeant's office, where he met with Sergeant Diehm, who issued Plaintiff disciplinary charges for violating Madden's order, in violation of N.J.A.C. 10A:4-4.1 charge .256, and unauthorized use of the mails, in violation of charge .701.   (*Id.* at 76).   Plaintiff informed the sergeant that he was pleading not guilty to both charges.   (*Id.*).

On February 11, 2009, a disciplinary hearing was held on these charges by Hearing Officer Meehan.   During that hearing, Petitioner was represented by a counsel substitute.   (*Id.* at 77). Following the hearing on the charges, Meehan found Plaintiff guilty of both charges and imposed sanctions of fifteen days detention, ninety days administrative segregation, and sixty days loss of commutation credits.   (Plaintiff's Statement of Facts, Exhibit B to ECF No. 114, at ¶ 26). Plaintiff filed an administrative appeal of this determination, which was upheld.   (*Id.* at ¶ 28-29).

In May 2009, Plaintiff came back before the state trial court on a motion for reconsideration of his sentence.   (Document 2 attached to ECF No. 119 at 52).   During those proceedings, the prosecutor's office requested that the trial court issue a written no contact order as part of the reconsideration of sentence.   (*Id.* at 52-53).   On June 1, 2009, the trial court issued an order denying the motion for reconsideration of sentence as out of time.   (*Id.*).   The trial court declined,

however, to issue an order of restraint at that time as the trial court found it to be a civil issue. (*Id.*).

On November 12, 2009, Plaintiff again mailed a birthday card to one of his victims.   (*Id.* at ¶ 35).   The following day, Plaintiff was again charged with the same two violations he had received for his previous letter.   (*Id.* at ¶ 39).   On November 15, 2009, Plaintiff mailed a letter to his former wife, for which he also received two disciplinary charges identical to those received for his other missives to his family.   (*Id.* at ¶ 37).   On November 17, 2009, Lois Ferguson wrote a letter to Investigator Madden requesting that Plaintiff be permitted to communicate with Mrs. Liddell for the sole purpose of effectuating the sale of their former residence going forward, but restating that the Sussex County Prosecutor's Office and Plaintiff's ex-wife and children maintained the position that Plaintiff should remain barred from any contact with his children, including the daughter to whom he sent the birthday card.   (Document 3 attached to ECF No. 112 at 123).

On December 20, 2009, another disciplinary hearing was held as to Plaintiff's four new charges.   At that proceeding, Hearing Officer Ozsvart found Plaintiff guilty of all of the disciplinary charges.   (*Id.* at ¶ 46).   Plaintiff was again sanctioned with fifteen days detention, ninety days administrative segregation, and sixty days loss of commutation time for these charges. (*Id.*).   Plaintiff appealed these charges, but they were again upheld by the prison administrator, Defendant Chetirkin.   (*Id.* at ¶ 49-50).

On February 8, 2010, Petitioner appealed his disciplinary charges to the Superior Court of New Jersey – Appellate Division.   (*Id.* at ¶ 52).   In response to the appeal, the New Jersey Attorney General's office, on behalf of the Department of Corrections, requested that the Appellate

Division remand the matter so that the administrative infractions could be vacated.   (*See* Exhibit 115 to ECF No. 107).   In so requesting, the DOC made the following statement to the Appellate Division:

> [The DOC] now requests a remand of this appeal for the purpose of dismissing both the .256 and .701 charges.   While the record reflects that [Plaintiff] was ordered not to contact his victims, who were his two daughters, he was never ordered [by the trial judge] to refrain from contacting his sons.   Further, while [Plaintiff] was ordered not to send anything to the victims' address, such order was not supported by any order of the criminal courts prohibiting him from contacting his son.   Thus, [the DOC] agrees that the charges against [Plaintiff] were not supported by substantial evidence in the record.   As such, [the DOC] will dismiss the .256 and .701 charges on remand.

(*Id.* at 5).   The Appellate Division granted the remand request, and the DOC ultimately dismissed all of the charges against Petitioner, rescinded the related sanctions, and removed all of the sanctions and charges from Plaintiff's prison records.   (Plaintiff's statement of facts at ¶ 64).   Plaintiff thereafter brought this action seeking damages arising out of Defendants' alleged negligence and alleged violations of Plaintiff's First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.


## II.   THE SUMMARY JUDGMENT MOTIONS

### A.   Legal Standard

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and

7

admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial." *Serodio*, 27 F. Supp. 3d at 550.

**B.  Plaintiff's[1]  Motion for Summary Judgment[2]**

**1.  Plaintiff's negligence and fraudulent misrepresentation claims**

Plaintiff moves for summary judgment as to all of his claims.  Plaintiff first presents a lengthy factual argument in support of his entitlement to summary judgment as to his claims for negligence and for the alleged filing of false disciplinary charges against him.   The central theme of Plaintiff's argument is that the no contact orders made by prison staff were invalid because there was no formal written order nor written statement in his judgment of conviction denying him contact with his family, and as a result the DOC and Prosecutor Defendants are liable to him either as a result of directly fraudulent conduct through the filing of false disciplinary charges or through negligently or grossly negligently failing to notice the improper nature of the charges when presented with them.   The fatal flaw in Plaintiff's factual argument, however, is that he completely ignores the clear no contact order rendered by Judge Conforti from the bench during his plea hearing.

Under New Jersey Law, a plaintiff seeking to make out a claim for negligence must

---

[1] Many of the arguments Plaintiff raises in his motion for summary judgment are subject to various forms of immunity, which will be discussed below in reference to the various Defendants' motions for summary judgment.   As such, Plaintiff's claims which are denied on the merits here are also subject to denial for the reasons stated below in relation to Defendants' motions.   This Court discusses Plaintiff's motions first because an understanding of the nature of Plaintiff's constitutional claims is necessary for the evaluation of Defendants' qualified immunity arguments.

[2] At the outset, this Court notes that Plaintiff's summary judgment brief exceeds the page limit for motion briefs set by Local Civil Rule 7.2 by nearly sixty pages.  L. Civ. R. 7.2(d) (setting a maximum brief size of 40 pages for 12-point non-proportional font text, and 30 pages for 12-point proportional font text).   Although Plaintiff is proceeding pro se, he is still required to comply with the rules of this Court. This Court will consider Plaintiff's over-length brief because of his pro se status, but Plaintiff is warned against repeating such conduct in the future.

establish three elements: that the defendants owed him a duty of care, that the defendants breached that duty of care, and that plaintiff's injuries were proximately caused by the defendants' breach. *Smith v. Kroeson*, 9 F. Supp. 3d 439, 442 (D.N.J. 2014).  "The burden of proving a negligence claim rests with the plaintiff, and as part of that burden, it is vital that plaintiff establish that his injury was proximately caused by the unreasonable acts or omissions of the defendant[s]."  *Id.* The difference between a claim of simple negligence and gross negligence "is one of degree rather than quality."  *Id.*  Gross negligence requires proof that the defendants' breach constituted indifference to the consequences of their actions.  *Id.*

Plaintiff essentially argues that Defendants were negligent or grossly negligent in ordering him to not contact his family, in charging him with violating that order, and in finding him guilty of disciplinary infractions on the basis of that order because that order was not supported by a no contact order issued by a court of law.   As previously asserted, the fatal flaw in these arguments is that Plaintiff *was* ordered not to contact at least some of his family by the New Jersey Superior Court, Law Division, during his plea hearing.   Judge Conforti specifically ordered him to have "no contact with the victims.   No contact with their mother.   Either directly or through third parties."  (Document 3 attached to ECF No. 114 at 82).   Thus, Plaintiff's assertion that he was ordered not to contact his family without the support of a court order is patently untrue, at least to the extent that order applied to Plaintiff's contacting his daughters and former wife.   At worst, the interpretation of that order by Defendants, i.e. that it included contact with Plaintiff's two sons who, at the time, lived with his victims and their mother, was overbroad.   Given the broad terms of the no-contact order issued from the bench, however, that interpretation appears to be a fair, if broad, interpretation of Judge Conforti's order.   Thus, Plaintiff's factual assertions are belied by

the credible evidence in the record.

Even were Plaintiff not subject to that no contact order, however, Plaintiff would still fail to make out his entitlement to summary judgment as to his negligence claims.   Although prisoners do possess a First Amendment right to communicate with friends and family through the mail, that right is subject to limitations which are reasonably related to the legitimate penological interests of the prison in which he is incarcerated.   *Caldwell v. Beard*, 305 F. App'x 1, 2 (3d Cir. 2008). "Prisons have a legitimate interest in protecting crime victims and their families from the unwanted communications of prisoners when a victim requests that the prison prevent such communication." *Samford v. Dretke*, 562 F.3d 674, 680 (5th Cir. 2009); *see also Berdella v. Deo*, 972 F.2d 204, 209 (8th Cir. 1992) ("the government's interest in protecting the public from harassment by inmates would justify prohibiting an inmate from sending mail to persons who have affirmatively requested that mail not be received from an inmate"); *Alex v. Beard*, No. 09-1711, 2010 WL 1416837, at *4 (M.D. Pa. Apr. 6, 2010) ("[a] prison policy that restricts contact between a sex offender and his victim is clearly rationally related to the legitimate interest of protecting victims and their families from unwanted communication, and harassment by prisoners when a victim requests such protection").   The public policy underlying such restrictions is even stronger in those cases where the person requesting no contact is the victim of Plaintiff's sexual crimes.   *See Mondonedo v. Roberts*, No. 12-3045, 2013 WL 1087352, at *6-7 (D. Kansas Mar. 14, 2013) (collecting cases).

Here, Plaintiff attempted to make contact with his victims, his two daughters, and their family including his former wife and two sons.   After Plaintiff made contact, his former wife, acting with the consent of his children, made a request to the county victim-witness coordinator, Defendant Ferguson, that no further contact with her children or herself be permitted.   Ferguson

11

passed that request on to the prison officials, and Defendant Madden specifically ordered Plaintiff to make no further attempts to contact any person at his family's residence.  This restriction, which prohibited Plaintiff from making contact with his victim daughters or their family members following a no-contact request, is therefore clearly rationally related to the legitimate penological interests of the prison in protecting the public from harassment and unwanted contact by inmates. *Samford*, 562 F.3d at 680; *Alex*, 2010 WL 1416837, at *4; *Mondonedo*, 2013 WL 1087352 at *6-7.  As the restriction is reasonable and is rationally related to such an interest, that restriction does not overburden Plaintiff's right to contact friends and family through the mail, and was therefore constitutionally proper and permissible.  *Caldwell*, 305 F. App'x at 2.  As such, even if Plaintiff were correct that there was no judge issued no-contact order, the order given by Defendant Madden would still be constitutionally proper and the remaining Defendants' reliance on that order in charging Plaintiff with and finding him guilty of the disciplinary infractions at issue here was likewise proper.  As the record shows that Defendant Ferguson did no more than communicate the victims' family's wishes to the prison, her actions, too, appear to have been appropriate under the circumstances.   Plaintiff has therefore failed to show that he is entitled to summary judgment on his negligence and gross negligence claims.

Plaintiff also asserts that he is entitled to summary judgment on his claim that the DOC Defendants filed false disciplinary charges against him on the basis of the same factual arguments, essentially arguing that because there was no order denying him contact, the charges against him were based on a false pretense.  As with his negligence claim, to the extent that Plaintiff wishes to make a state law claim for fraud or misrepresentation,[3] Plaintiff's false charges claim is based

---

[3] Claims sounding in fraud under New Jersey Law require that the challenged statements be

on a fundamental disagreement with the facts at hand.   Plaintiff was subject to a no-contact order given by Judge Conforti, and in any event was subject to a constitutionally valid order not to contact anyone at his family's address given to him by Defendant Madden.   Plaintiff does not deny that he continued to make contact with his family, including both his son and daughter, after this order was given, and as such he essentially concedes that, if the order of Madden was valid, he committed the violations with which he was charged.   Likewise, his disciplinary charges never asserted that he had violated a court ordered no-contact ruling, but rather that he violated the direct order of Defendant Madden not to contact anyone at his victims address.   Clearly, Madden gave that order, and Plaintiff clearly violated that order, thus there was neither fraud nor a misrepresentation as the charges Plaintiff decries did not involve a false statement of material fact. *See, e.g., Banco Popular N. Am. V. Gandi*, 184 N.J. 161, 171-74, 876 A.2d 253 (2005) (requiring a material misstatement of a presently existing or past fact and knowledge of its falsity by the defendant for a fraud claim under N.J. law).   As such, Plaintiff's arguments do not establish that he is entitled to summary judgment as to his false disciplinary charges claim.

Even were the facts more in line with Plaintiff's claims, he would still not be entitled to summary judgment on his false disciplinary charge claims to the extent that that claim arises under § 1983.   "[T]he act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights."   *Poole v. Mercer Cnty. Corr. Ctr.*, No. 11-3730, 2012 WL 694689, at *2 (D.N.J. Feb. 29, 2012); *see also Mimms v. U.N.I.C.O.R.*, 386 F. App'x 32, 36 (3d Cir. 2010) (the "filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges"); *Smith v. Mensinger*, 293 F.3d

---

false.   *See, e.g., Banco Popular N. Am. V. Gandi*, 184 N.J. 161, 171-74, 876 A.2d 253 (2005).

641, 653-54 (3d Cir. 2002).   Under the U.S. Constitution, an inmate is entitled to written notice of the charges against him and no less than 24 hours to marshal evidence and prepare his defense, a written statement by the fact finder as to the evidence relied on and the reasoning behind his decision, and an opportunity to call witnesses and present documentary evidence in the plaintiff's defense when to do so will not be unduly hazardous to institutional safety or the correctional facility's goals.   *Poole*, 2012 WL 694689 at *2; *see also Wolff v. McDonnell*, 418 U.S. 539, 563-71 (1974).   Pursuant to the New Jersey State Constitution and New Jersey Law, inmates are likewise entitled to written notice and at least 24 hours to prepare for their hearing, an impartial tribunal which may be made up of Department of Corrections staff, the right to call witnesses and present documentary evidence subject to limitations based on undue hazards to institutional safety or correctional goals, a similarly limited right to the confrontation and cross-examination of witnesses, a right to a written statement of the evidence relied upon by the tribunal and a statement of reasons supporting the tribunal's decision, the assistance of counsel substitute and the right to be read the charges where the inmate is illiterate or is unable to prepare his own defense.   *See Avant v. Clifford*, 67 N.J. 496, 525-33, 341 A.2d 629, 645-49 (1975); *see also Ries v. Dep't of Corr.*, 933 A.2d 638, 641 (N.J. App. Div. 2007) (citing *Avant* as setting forth the "applicable norms of due process" in New Jersey for prison disciplinary hearings).   A decision in a disciplinary proceeding is proper where that decision is supported by "substantial credible evidence" in the record.   *Ries*, 933 A.2d at 641.

The facts presented by the parties at summary judgment indicate that Plaintiff has received the benefit of the requirements of the Due Process Clause.   In each instance, Plaintiff was promptly informed of the charges against him, was offered the opportunity to have a counsel

14

substitute, and was given more than 24 hours to prepare his defense before a hearing on the charges, and the charges were promptly investigated by Madden and others.   Although Plaintiff takes issue with the decisions issued by the hearing officers and by administrators upholding those decisions on administrative appeal, Plaintiff received a written statement of reasons in support of each decision which explained the basis for the guilty findings against him, and nothing in the record other than Plaintiff's own hearsay allegations suggests that the hearing officers were not impartial.

At best, Plaintiff presents only two factual assertions in support of his claim.   First, Plaintiff asserts that during the second disciplinary hearing, he was denied the benefit of counsel substitute.   Second, Plaintiff asserts that he was denied the right to call as a witness his ex-wife in support of the contention that he was allowed to contact her because she had asked him to sign off on the sale of the marital home.[4]   The documentation of the disciplinary hearing provided by Defendants, however, shows that although Plaintiff initially requested counsel substitute, he apparently decided later not to request counsel substitute at the December 30th hearing. (Document 3 attached to ECF No. 119 at 4-6, 10-12).   Plaintiff himself signed off on these forms attesting to their accuracy.   (*Id.*).   These same forms indicate that although Plaintiff originally stated an intent to call his ex-wife as a witness at this hearing, he apparently changed his mind as

---

[4] This Court notes that the value of that testimony would likely have been limited.   Plaintiff himself alleges that he brought up this issue with the hearing officer and was told that it would have no effect upon the decision were it true.   In any event, Defendant Madden's order remained in place, and Mrs. Liddell only asked that Plaintiff be allowed to contact her for this limited purpose after Plaintiff had been charged for sending her a response.   Thus, Plaintiff did not seek to alter Madden's order before sending the letter, and thus the facts support the conclusion that he violated the direct order of Defendant Madden.

he made no request to call her as a witness during the hearing.   (*Id.* at 11-12).   Taking Plaintiff's

arguments at face value, the forms may appear at first glance to create a dispute of material fact as

to whether Plaintiff received the benefits of these contested rights.   However, the fact remains that

Plaintiff has certified on those forms that he made no request for counsel substitute or his ex-wife's

testimony at the hearing itself, and the DOC Defendants are therefore entitled to summary

judgment as they provided all process which was due based on the requests made by Plaintiff at

the hearing.   As the DOC Defendants are entitled to summary judgment on this basis, Plaintiff's

summary judgment motion must be denied.[5]

Plaintiff also argues that he was denied due process to the extent that he was not provided,

at the hearing, with a copy of a fax sent by Defendant Ferguson to either Beverly Hastings or

Defendant Madden.   The faxes sent by Ferguson to Madden, however, have no bearing on the

issue of whether Plaintiff violated the order of Defendant Madden that Defendant have no contact

---

[5] Plaintiff also attempts to argue, at length, that the hearing officer in his first disciplinary
hearing, Defendant Meehan, also violated his due process rights.   Plaintiff admits, however, that
he has never served Meehan, and that Meehan is, as a result, not a party to this action and not
before this Court.   Defendant Goodwin, the administrator who upheld Meehan's decision, was
likewise never served and is therefore also not properly before this Court.   As such, Plaintiff's
arguments regarding Meehan's alleged violations, and any argument that Goodwin violated
Plaintiff's rights by upholding Meehan's decision, are not properly addressed to any Defendant
who is subject to this Court's authority in this matter.   This Court therefore need not address
Plaintiff's arguments regarding Meehan and Goodwin, but notes, however, that Plaintiff appears
to have received all the Process that was due in his first hearing.   Plaintiff's assertion against
Meehan is essentially that his decision was not properly explained nor supported by sufficient
evidence.   The evidence clearly shows that Plaintiff was ordered not to contact his family, and
then did so.   Meehan's decision was therefore based on sufficient, credible evidence, and was
therefore proper.   *Ries*, 933 A.2d at 641.   Meehan likewise explained that decision in his
written findings, albeit only briefly as the violation of Madden's order was clear.   (*See*
Document 3 attached to ECF No. 119 at 6, ¶ 18-20).   Thus, the record clearly shows that
Plaintiff received the process he argues he was denied, and Plaintiff would not be entitled to
summary judgment in any event.

with anyone at his family's home.   To the extent that Plaintiff argues that these faxes expose an underlying flaw in Madden's order, this Court would reiterate that Madden did not need a court order under these circumstances to limit Plaintiff's right to contact his family.   As such, there is no genuine dispute of material fact regarding a failure to turn over "evidence" which had no actual bearing on the question before the disciplinary officer: whether Plaintiff contacted someone at his victims' address after being ordered not to do so by Madden.   Summary judgment for Plaintiff is therefore inappropriate.

Plaintiff also attempts to argue that his Due Process rights were impugned by the delay between the Appellate Division's remand orders and the elimination of the charges against Plaintiff.   Plaintiff specifically attempts to argue that the prison's actions amount to civil contempt of the remand order.   This argument, however, does not take into account the fact that the remand orders issued in this case did no more than grant the New Jersey Attorney General's request that the case be remanded, and included no instructions as to what would be done on remand or how quickly the remand issued needed to be resolved.   Plaintiff admits that all of the charges were ultimately removed from his record, and his lost credits returned to him.   As such, Plaintiff's argument as to the remand order is unavailing, and summary judgment on his Due Process claims is inappropriate.

Plaintiff's final set of arguments regarding his state law tort claims applies only to the Prosecutor Defendants.   To the extent that he argues that the Prosecutor Defendants are liable for the actions taken by Ferguson in contacting the prison, Plaintiff is not entitled to summary judgment as these Defendants are entitled to good faith immunity under the Tort Claims Act for the reasons discussed below, and because Ferguson's conduct was reasonable under the

17

circumstances and was not fraudulent.  To the extent that Plaintiff attempts to argue that Defendant Weaver is liable to Plaintiff for the attempts by members of his office to secure a further no contact order during Plaintiff's sentencing reconsideration hearing, such an argument is saddled with an underlying flaw.  As Plaintiff himself is keen to indicate, those attempts produced no result.  The state trial court denied the request to enter such an order at the conclusion of that hearing.  Plaintiff's rights, such as they are, were in no way affected by the prosecutor's office's attempt to obtain a written no contact order during the reconsideration hearing.  As such, Plaintiff has failed to show how this event affected him, and as a result has not shown that he is entitled to summary judgment on that basis.  At best, the prosecutor's actions during that hearing are no more than evidence which would support Plaintiff's argument that there was not a court ordered no contact order in place.  As the record clearly shows that there was a verbal order entered during Plaintiff's plea hearing, however, the record contradicts any value Plaintiff would derive from such evidence.  Ultimately, Plaintiff has failed to show that he is entitled to summary judgment on his state law and Due Process claims, and Plaintiff's motion for summary judgment is denied as to those claims.

**2.  Plaintiff's First Amendment Claims**

Plaintiff's chief claim is that his First Amendment rights were violated both directly by Madden's no contact order, and by the punishment he received for violating that order which Plaintiff alleges was retaliatory.  As previously explained, in relation to Plaintiff's negligence claims, Plaintiff is not entitled to summary judgment on his direct claim that Madden's no contact order violated Plaintiff's First Amendment rights, and so this Court now turns to the retaliation

claim.   "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."   *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).   As a threshold matter, a First Amendment plaintiff must identify the protected activity in which he engaged which he alleges incurred the retaliation.   *George v. Rehiel*, 738 F.3d 562, 585 (3d Cir. 2013); *Eichenlaub v. Twp. Of Indiana*, 385 F.3d 274, 282 (3d. Cir. 2004).

Here, the allegedly protected activity in which Plaintiff engaged was the contact of his family after he had been ordered not to contact them on the basis of the crimes he had committed against his daughters.   Plaintiff's retaliation claim suffers from the same deficiency which mires his direct First Amendment claim: his rights were curtailed by a legitimate restriction placed upon him by the prison which was rationally related to a legitimate penological interest; preventing Plaintiff from harassing his victims and his family after that family requested that no further contact be permitted.   *See Samford*, 562 F.3d at 680; *Caldwell*, 305 F. App'x at 2.   Because those restrictions, even in the absence of a written court order, were legitimate, lawful, and comported with the First Amendment for the reasons explained above, they were binding upon Plaintiff and set the limit of Plaintiff's First Amendment rights during his imprisonment.   As the activity Plaintiff asserts to support his retaliation claim was his violation of those lawful restrictions, this activity does not qualify as "protected conduct" sufficient to support a First Amendment retaliation claim.   Since Plaintiff did not engage in conduct protected by his First Amendment rights, the disciplinary actions taken against him cannot qualify as retaliatory, and Plaintiff's motion for summary judgment on both his direct and retaliatory First Amendment claims must be denied.   As

this Court is denying Plaintiff's motion as to all of his claims for the reasons set forth above and because several Defendants are entitled to immunity for the reasons provided below, Plaintiff's motion for summary judgment is denied in its entirety.

## C. The DOC Defendants' motion for summary judgment

## 1. The Tort Claims Act and Plaintiff's Negligence claims

The DOC defendants first argue that they are entitled to summary judgment as to Plaintiff's negligence claims, and Plaintiff's false charges claim to the extent that it is not based on § 1983, pursuant to the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1 *et seq.* The Tort Claims Act provides the procedural framework for state law claims made against public entities and their employees in the state of New Jersey. *Davis v. Twp. Of Plainsboro*, 371 F. Supp. 2d 611, 617 (D.N.J. 2005). The Act "was enacted with the purpose of limiting a public entity's or a public employee's liability in certain situations." *Davis v. Twp. Of Plainsboro*, 371 F. Supp. 2d 611, 617 (D.N.J. 2005). Thus, although the Act to some extent waived traditional sovereign immunity for the State of New Jersey, "the 'guiding principle' of the Tort Claims Act is 'that immunity from tort liability is the general rule and liability is the exception.'" *D.D. v. Univ. of Med. & Dentistry of New Jersey*, 213 N.J. 130, 133, 61 A.3d 906 (2013) (quoting *Coyne v. State Dep't of Transp.*, 182 N.J. 481, 488, 867 A.2d 1159 (2005)).

The DOC Defendants argue that Plaintiff's claims against them arise out of the filing and prosecution of disciplinary claims against Plaintiff, and as such they should be immune from suit pursuant to N.J. Stat. Ann. § 59:3-8. Section 59:3-8 provides that a "public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within

the scope of his employment."   This grant of immunity is subject to an outer limit in the form of N.J. Stat. Ann. § 59:3-14(a) which provides that "[n]othing in [the Act] shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct."   *See also Van Engelen v. O'Leary*, 323 N.J. Super. 141, 150-51, 732 A.2d 540 (N.J. App. Div.), *certif. denied*, 162 N.J. 486, 744 A.2d 1208 (1999).   "[C]arelessness or poor decision making do not constitute 'actual fraud, actual malice or willful misconduct.'   Those terms connote 'commission of a forbidden act with actual . . . knowledge that the act is forbidden.'"   *Id.* at 151 (quoting *Marley v. Borough of Palmyra*, 193 N.J. Super. 271, 294-95, 473 A.2d 554 (N.J. Law Div. 1983)). The immunity provided by § 59:3-8 is effectively a codification of the common law concept of prosecutorial immunity as it existed in New Jersey prior to the adoption of the Tort Claims Act.   *Id.* at 150 n. 3.

Here, Plaintiff's claims arise out of his contention that the DOC Defendants were either negligent or purposefully liable for making "false" charges against him and denying him rights at his disciplinary hearings.   He makes these claims against Defendants Madden, who investigated the incidents, Diehm, who charged Plaintiff, Ozsvart, who was the hearing officer, and Chetirkin, who upheld the hearing officer's decision on administrative appeal.   While Section 59:3-8 generally refers to a form of prosecutorial immunity, the New Jersey courts have extended its protections to those who investigate on behalf of prosecutors, such as a chief of detectives who obtained sworn statements for the prosecution.   *See Van Engelen*, 323 N.J. Super. at 153 (noting that the statute does not limit its protections to prosecutors only, but to any "public employee" involved in instituting or prosecuting a judicial or administrative proceeding).

Thus, the protections of 59:3-8 can be said to extend to both those who institute or prosecute disciplinary charges, which certainly fall within the confines of an administrative proceeding, and those who investigate the disciplinary matter on behalf of those individuals. Thus, the facts introduced here show that the protections of the statute would rightly apply to both Defendant Diehm, who charged Plaintiff with disciplinary infractions and did some investigation thereof, and to Defendant Madden who investigated Plaintiff's actions and interviewed him based thereon, provided that neither Defendant acted in a manner which would preclude immunity pursuant to section 59:3-14(a).   What does not follow, however, is Defendants' assertion that the section would apply to a hearing officer, acting in a quasi-judicial role as the impartial tribunal guaranteed under New Jersey law by *Avant*, or the administrator who heard Plaintiff's appeal, who was acting in a similarly adjudicatory role.   *See Juan v. Rafferty*, 577 F. Supp. 774, 779 (D.N.J. 1984) (hearing officers are called upon to "adjudicate[] disciplinary charges" which includes "weighing the credibility of inmates against the credibility of . . . correctional officers").   Thus, although hearing officers and administrators acting in an adjudicatory role are not as independent as administrative law judges, *see Id.*, they are not acting in a truly investigatory or prosecutorial role.   They are therefore not clearly within the confines of this section of the statute.   Defendants have not provided any case law or argument specifically addressing this question, and this Court is aware of no basis for determining that the adjudicatory hearing officer and the administrator who upheld his ruling were "instituting or prosecuting" an administrative charge.   As such, they do not appear to be within the group of employees protected by section 59:3-8, and this Court declines to extend the statute to provide them immunity at this time.

Section 59:3-8 therefore applies only to Defendants Madden and Diehm.   The remaining

question as to these two Defendants is whether their conduct "was outside the scope of [their] employment or constituted a crime, actual fraud, actual malice or willful misconduct."   N.J. Stat. Ann. § 59:3-14(a).   An act is beyond the scope of employment where the employee "engages in tortious conduct that is not reasonably connected with [his] employment.   What types of conduct are reasonably connected to one's employment necessarily turns on the factual circumstances." *Kelly v. Cnty. of Monmouth*, 380 N.J. Super. 552, 564, 883 A.2d 411 (N.J. App. Div. 2005).   Here, Plaintiff asserts that Defendants Madden and Diehm are liable for either negligently or intentionally constricting Plaintiff's first amendment rights and in punishing him for refusing to follow Madden's order.   This conduct, in addition to being constitutionally proper for the reasons outlined above, is clearly related to the professional duties and responsibilities of Diehm and Madden's employment as officers of the prison.   Thus, immunity attaches to them absent "crime, actual fraud, actual malice or willful misconduct."   Nothing in the record suggests either individual engaged in such behavior, and certainly nothing in the record suggests that they committed a "forbidden act with actual . . . knowledge that the act is forbidden.'"   *Van Engelen*, 323 N.J. Super. at 151.   The acts committed here, ordering Plaintiff not to contact his family and then punishing him for not following that order appear to have been entirely proper and not forbidden.   Moreover, the conduct was not of the sort that either defendant should have known was forbidden as explained in relation to qualified immunity below.   As such, both Defendants Madden and Diehm are entitled to immunity under the Tort Claims Act, and judgment on Plaintiff's negligence and fraudulent misrepresentation claims shall be entered in their favor.

Although they are not entitled to immunity under § 59:3-8, summary judgment as to Plaintiff's negligence claims is also appropriate as to Defendants, Ozsvart and Chetirkin as these

Defendants were not negligent.   The claim as to these two defendants rests on two assertions: that they negligently denied him due process, and that they were negligent in failing to notice that there was not a written court order underlying Madden's order.   As previously discussed in relation to Plaintiff's motion for summary judgment, Plaintiff has received all of the process he was due, and Ozsvart and Chetirkin therefore did not "negligently" deny Plaintiff those rights.   To the extent that Plaintiff argues that they were negligent in failing to notice that there was no written court order, that argument is immaterial: Madden had the authority to make the no-contact order here regardless of whether there was a court order, Madden did so, and her order comports with the First Amendment.   As such, Defendants were not negligent in failing to notice the absence of a court order as that absence had absolutely no bearing on whether Plaintiff was guilty of violating Madden's order.   Thus, Defendants Ozsvart and Chetirkin were not negligent, and they are entitled to summary judgment as to Plaintiff's negligence claims.[6]

---

[6] Although the DOC Defendants do not raise the argument, this Court notes that Defendants Ozsvart and Chetirkin would also be entitled to immunity under the Tort Claims Act.   *See* N.J. Stat. Ann. § 59:3-2(b) (a public employee "is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature").   Clearly, Ozsvart and Chetirkin, as executives sitting in a quasi-judicial role, engaged in administrative action of a judicial nature, and, as discussed above, Plaintiff has failed to show any actual malice sufficient to deprive Defendants of immunity under the Tort Claims Act.   As such, Ozsvart and Chetirkin would be entitled to immunity under the Act as to Plaintiff's negligence claims.

**2.   Qualified Immunity and Plaintiff's § 1983 claims**

The DOC Defendants also argue that they are entitled to qualified immunity on Plaintiff's § 1983 claims for the alleged violations of his First Amendment and Due Process rights.   "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law."   *Spady v. Bethlehem Area Sch. Dist.*, --- F.3d ---, ---, 2015 WL 5103553, at *3 (3d Cir. Sept. 1, 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, (2011)).

In determining whether qualified immunity applies, courts engage in a two-pronged test. *Id.*   "First a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right'[, a]nd second, the Court must determine 'whether the right at issue was clearly established at the time of [the] defendants alleged misconduct.'"   *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).   Where the clearly established prong of the qualified immunity test is dispositive, a court should address that prong first.   *Id.*   In addressing the clearly established prong, the court must "frame the precise contours of [the] right" the plaintiff claims has been violated.   *Id.* at 4.   The Third Circuit has provided the following guidance to a court engaging in this endeavor:

> We are mindful . . . that courts are "not to define clearly established law at a high level of generality."   *al-Kidd*, 131 S. Ct. at 2084 (citations omitted).   Instead, courts "must define the right allegedly violated at the appropriate level of specificity."   *Sharp v.*

25

> *Johnson*, 669 F.3d 144, 159 (3d Cir. 2012).   Accepting [a] broad version of the right at issue "would . . . convert the rule of qualified immunity that our cases plainly establish into a rule of extremely abstract rights."   *Anderson v. Creighton*, 483 U.S. 635, 639 [(1987)].   We are thus required to frame the right at issue "in a more particularized, and hence more relevant, sense," *Anderson*, 483 U.S. at 640, "in light of the case's specific context, not as a broad general proposition," *Saucier[ v. Katz*, 533 U.S. 194, 201 (2001)].

*Id.*   A right is clearly established where there is applicable precedent from the Supreme Court, or, where no case is directly on point, where "existing precedent [has] placed the statutory or constitutional question *beyond debate*."   *Id.* (quoting *al-Kidd*, 131 S. Ct. at 2083).   It remains unsettled whether "a robust consensus of cases of persuasive authority in the Court of Appeals" would be sufficient to establish a constitutional right.   *Id.*   It has been settled, however, that a right is clearly established where a court can conclude that "the firmly settled state of the law, established by a forceful body of persuasive precedent, would place a reasonable official on notice that his actions obviously violated a clearly established constitutional right."   *Id.*

In this case, as previously discussed, Plaintiff makes two types of constitutional claims: that his First Amendment rights to contact with his family through the mail has been violated directly and through retaliation against him through disciplinary hearings arising out of his engaging in allegedly protected activity in the form of letters to his family, including his victims, and claims for violations of his due process rights under the Fourteenth Amendment during those disciplinary hearings.   Turning to the First Amendment, this Court construes the right that Plaintiff claims was violated as follows: the right of a convicted sex offender to contact his victims and their family following a request by the members of that family that no contact be permitted. As discussed above, while prisoners do have a constitutional right to maintain contact with friends and family through the mail, that right is not absolute, and is instead subject to reasonable

restrictions which are rationally related to legitimate penological interests.   *See Caldwell*, 305 F. App'x at 2; *see also Thorburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987).   Such reasonable restrictions include those which require the opening and inspection of outgoing mail when that action is supported by a legitimate interest related to the security, good order, or discipline of the institution.   *Caldwell*, 305 F. App'x at 2; *see also Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993).   Orders which prevent a convicted sex offender from contacting his victims or their families are rationally related to legitimate penological interests.   *Samford*, 562 F.3d at 680.   This Court is aware of no decision of the Supreme Court which establishes that a sex offender retains the right to contact his victims and their families, even when those individuals are members of his own family, where those victims and their families have requested that contact cease.   The weight of precedent available to this Court recounted here suggests instead that convicted sex offenders enjoy no such constitutional right.   At bottom, it has not been clearly established that such a right exists to the extent that any reasonable prison official would or should have known that they were violating the law in restricting Plaintiff's contact with his family here.   Thus, the DOC Defendants did not violate a clearly established right of Plaintiff by ordering him to have no further contact with anyone sharing an address with his victims/daughters and their mothers, even in the absence of a written court issued no contact order.   All of the DOC Defendants are therefore entitled to qualified immunity as to all of Plaintiff's First Amendment claims, be they direct or for First Amendment retaliation.   *Spady*, --- F.3d at ---, 2015 WL 5103553 at *3-4.

Plaintiff's remaining constitutional claim is a claim that he was denied his rights under the Due Process Clause of the Fourteenth Amendment during his prison disciplinary proceedings.

Plaintiff is therefore decrying the alleged denial of his right to present his case in response to disciplinary proceedings, including the right to call his ex-wife as a witness during one of those proceedings.   The Due Process rights announced in *Wolff* are clearly established.   *Wolff*, 418 U.S. at 563-71.   The question as to Plaintiff's Fourteenth Amendment claims, then, is whether Plaintiff actually suffered a violation of those rights.   As discussed previously in the context of Plaintiff's motion for summary judgment, the evidence submitted by the parties regarding Plaintiff's due process claim rests entirely on his argument that he was denied counsel substitute and the right to call his ex-wife as a witness.   The documents produced following Plaintiff's hearing, however, show that Plaintiff chose neither to request counsel substitute nor to request that his ex-wife be called as a witness during the hearing on his disciplinary charges.   The forms that establish that Plaintiff made these decisions at the hearing include a signed statement by Plaintiff establishing that the information contained in those forms "accurately reflects what took place at the inmate disciplinary hearing."   (Document 3 attached to ECF No. 119 at 4-6, 10-12).   As the forms show that Plaintiff requested neither his ex-wife's testimony nor counsel substitute during his disciplinary hearing before Defendant Oszvart, Plaintiff received the benefit of all process which was due.   As such, no violation of Plaintiff's clearly established rights occurred, and the DOC Defendants are entitled to qualified immunity as to Plaintiff's Due Process claims.   Summary judgment in favor of the DOC Defendants is therefore granted as to all of Plaintiff's § 1983 claims.

### 3.   Plaintiff's False Disciplinary Charge Claims

The final distinct argument put forth by the DOC Defendants is that, to the extent that it is

separate and apart from Plaintiff's Due Process related claims and instead relies on common law fraud based claims, Plaintiff's false disciplinary charge must fail as the charges against Plaintiff were not false.   This Court agrees.   As explained above in reference to Plaintiff's motion for summary judgment, fraud related claims in New Jersey require that a Plaintiff show a material misstatement of a presently existing or past fact, and knowledge on the defendant's part of that statement's falsity.   *See Gandi*, 184 N.J. at 171-74; *see also Kaufman v. i-Stat Corp.*, 165 N.J. 94, 119-20, 754 A.2d 1188 (2000).   Plaintiff has provided no facts which would support a conclusion that the disciplinary charges against him were false.   Indeed, he as much as admits that he violated Madden's order, and repeatedly argues and alleges that no Defendant ever provided him with or claimed reliance upon a specific court order whose existence has been shown to be false by Plaintiff.   As Plaintiff did and was charged with violating Madden's order, regardless of that order's legitimacy, the charges against him were not false.   Defendants are therefore entitled to summary judgment on Plaintiff's fraudulent misrepresentation/false charges claim both as a § 1983 claim and to the extent that it arises out of a state law fraud claim.   This Court will therefore grant the DOC Defendants' motion for summary judgment in its entirety, and will now turn to the Prosecutor Defendants' motion.

### D.   The Prosecutor Defendants' Motion for Summary Judgment

The Prosecutor Defendants have also moved for summary judgment on the basis of qualified immunity as to Plaintiff's § 1983 claims, and on the basis of Tort Claims Act immunity as to Plaintiff's state law claims.   The facts at hand clearly show that Defendant Ferguson, who did no more than pass on the wishes of Plaintiff's former wife that he have no further contact with his victims and their family, acted reasonably throughout the events Plaintiff challenges, and as such summary judgment in her favor, and in Defendant Weaver's favor as her supervisor is appropriate here.   Ferguson was not negligent, Plaintiff has failed to show that she made any false or fraudulent statements, and she denied Plaintiff no rights.   For the reasons explained above, all Defendants are entitled to qualified immunity as to Plaintiff's First Amendment claims as the right in question was not clearly established, and as to Plaintiff's Fourteenth Amendment claims as Plaintiff received all the Process which was due, and Plaintiff's rights were therefore not violated.[7]

---

[7] Plaintiff's Due Process claims against the Prosecutor Defendants would also fail because Plaintiff connects them to the alleged Due Process violations solely through allegations of conspiracy.   In order to establish a conspiracy under § 1983, as with a conspiracy generally, a Plaintiff must show that there was an agreement and that there was concerted action.   *See, e.g., Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009).   A plaintiff's unsubstantiated allegations are insufficient to overcome summary judgment as to conspiracy, and a plaintiff must provide some factual basis to support his claim as to a conspiracy to survive summary judgment.   *Burgos v. Canino*, 358 F. App'x 302, 308 (3d Cir. 2009).   Neither a showing that differing defendants' independent conduct caused the plaintiff harm, nor a showing that conscious parallelism caused such harm is sufficient to establish a conspiracy absent some evidence that the alleged conspirators "directed themselves toward an unconstitutional action by virtue of a mutual understanding or agreement."   *Prince v. Aiellos*, No. 09-5429, 2010 WL 4025846, at *7 (D.N.J. Oct. 12, 2010) (quoting *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 539 (E.D. Pa. 1982)).   In order to establish a conspiracy under § 1983, a Plaintiff must also prove an underlying violation of the statute.   *Thomas v. City of Vineland*, No. 12-6396, 2015 WL 4757817, at *8 (D.N.J. Aug. 12, 2015).   Here, Plaintiff provides no more than allegations of conspiracy, and has failed to show an agreement to violate his rights.   As such, his conspiracy allegations fail, and the sole connection between the Prosecutor Defendants and the alleged Due Process violations must also fail.   In any event, because there was no underlying violation, the

The Prosecutor Defendants are therefore entitled to summary judgment as to all of Plaintiff's §
1983 claims.  Because Ferguson and, in turn, Weaver acted reasonably, Plaintiff has failed to
show that Ferguson owed him a duty of care nor that she breached such a duty, and Ferguson made
no false statements, they are likewise entitled to summary judgment as to Plaintiff's state law
claims.

Plaintiff's state law claims must also fail because the Prosecutor Defendants are immune
from damages under the Tort Claims Act, specifically section 59:3-3.   Section 59:3-3 provides
public employees with immunity when they act "in good faith in the execution or enforcement of
any law."  N.J. Stat. Ann. § 59:3-3.   "This good faith statute 'confers an immunity on public
employees for acts or omissions in the course of the enforcement of a statute, ordinance, or
regulation.'"  *Vasquez v. Gloucester Cnty.*, No. 13-4146, 2015 WL 3904550, at * 4 (D.N.J. June
25, 2015) (quoting *Frields v. St. Joseph's Hosp. & Med. Ctr.*, 305 N.J. Super. 244, 249, 702 A.2d
353 (N.J. App. Div. 1997).   Good faith immunity has two components: a "public employee ether
must demonstrate objective reasonableness or that he behaved with subjective good faith."
*Whichard v. Willingboro Twp.*, No. 13-3606, 2015 WL 5054953, at *8 (D.N.J. Aug. 26, 2015)
(quoting *Alston v. City of Camden*, 168 N.J. 170, 186, 773 A.2d 693 (2001)).   Immunity under
this section is subject to exception, however, where the employee's acts were outside the scope of
employment or constituted a crime, actual fraud, actual malice, or willful misconduct.   *Id.*
Finally, to be entitled to good faith immunity, a defendant must identify what statute, ordinance,
or regulation they were enforcing at the time of the challenged conduct.   *See Vasquez*, 2015 WL
3904550 at *4-5; *Frields*, 305 N.J. Super. at 249 n. 1; *see also Leang v. Jersey City Bd. Of Educ.*,

---

Prosecutor Defendants are entitled to summary judgment.

31

399 N.J. Super. 329, 365, 944 A.2d 675 (N.J. App. Div. 2008), *aff'd in part*, 198 N.J. 557, 969 A.2d 1097 (2009).

Here, Ferguson acted in good faith with regard to her responsibility to "be responsible for the implementation of the victim-witness rights program" for the county under N.J. Stat. Ann. § 52:4B-45.   As Ferguson acted reasonably and did so in the process of executing her statutorily mandated duty to implement a victim-witness rights program in the county, the Prosecutor Defendants are entitled to good faith immunity under the Tort Claims Act so long as Ferguson's actions were within the scope of her employment and did not constitute a crime, actual malice, actual fraud, or willful misconduct.   Clearly, making the no contact request was within the scope of Ferguson's employment, and there is no evidence of actual fraud in so much as there is no evidence which shows that Ferguson made material misstatements in her communications with the prison.   Likewise, there is no evidence that Ferguson acted with actual malice.   Finally, there is no evidence that Ferguson's actions – relaying the requests of Mrs. Liddell to the prison – were wrongful, and the evidence certainly does not support the supposition that Ferguson knew that she was engaging in wrongful conduct and consciously chose to so act regardless of the consequences. As Ferguson's conduct does not fall into the exceptions to Tort Claims Act immunity as a result, *see Van Engelen*, 323 N.J. Super. at 150-51; *Whichard,* 2015 WL 5054953 at *8, Ferguson is entitled to good faith immunity regarding Plaintiff's state law tort claims.   As Plaintiff's claims against Defendant Weaver are derivative of and dependent on his claims against Ferguson, Weaver is likewise entitled to good faith immunity in relation to Plaintiff's state law claims.   As such, the Prosecutor Defendants are entitled to good faith immunity, and judgment must therefore be entered in their favor as to Plaintiff's state law claims.   As the Prosecutor Defendants are entitled to

summary judgment as to all of Plaintiff's claims, this Court will grant their motion in its entirety.

## III. CONCLUSION

For the reasons stated above, this Court denies Plaintiff's motion for summary judgment, and grants both the DOC and Prosecutor Defendants' motions for summary judgment as to all of Plaintiff's claims.   An appropriate order follows.

Dated: October 19, 2015                          _s/Susan D Wigenton_____
                                                 Hon. Susan D. Wigenton,
                                                 United States District Judge